IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | |
| : | CIVIL ACTION |
| PAUL T. HOLLER and : | |
| PHILOMENA HOLLER, : | |
|     Debtors. : | No. 12-383 |
| : | BANKRUPTCY APPEAL |

<u>MEMORANDUM</u>

Schiller, J.                                                                              August 14, 2012

      NOVA Bank appeals a bankruptcy court decision granting the motions of Debtors Paul T. Holler and Philomena Holler, husband and wife, to avoid judicial liens on their home. For the following reasons, the Court affirms the decision of the Bankruptcy Court.

**I.    BACKGROUND**

      On October 30, 2007, NOVA loaned $45,000 to B&P Carpet Installers, Inc., of which Philomena Holler was the sole shareholder. (Stipulation Submitted in Connection with Debtors' Motions to Avoid Judicial Liens [Stipulation] ¶ 1; Appellee's Br. at 1.) At the same time, Philomena Holler and Paul Holler each executed a separate commercial guaranty for the loan. (Stipulation ¶¶ 2-3.) Also on that date, NOVA loaned the Hollers $99,000, secured by a mortgage on their home in Allentown, Pennsylvania, which they own as tenants by the entirety. (*Id.* ¶¶ 4, 11; Stipulation Ex. D [Mortgage].) On December 7, 2007, NOVA made a second loan in the amount of $40,000 to B&P. (Stipulation ¶ 1.) Once again, the Hollers each executed a separate commercial guaranty for the loan. (*Id.* ¶¶ 5-6.) The language of the guaranty agreements makes clear that the documents could be signed by multiple parties. (*See* Stipulation Exs. B, C, E, and F [Commercial Guars.] at 3.)

      B&P eventually defaulted on both loans. (Stipulation ¶ 7.) At slightly different times on August 3, 2010, four judgments were entered by confession in the Lehigh County Court of Common

Pleas: (1) a judgment in the amount of $40,098.44 against Philomena Holler relating to the balance owed on the B&P loan executed on October 30, 2007; (2) a judgment in the amount of $40,098.44 against Paul Holler relating to the balance owed on the B&P loan executed on October 30, 2007; (3) a judgment in the amount of $41,076.31 against Philomena Holler relating to the balance owed on the B&P loan executed on December 7, 2007; and (4) a judgment in the amount of $41,076.31 against Paul Holler relating to the balance owed on the B&P loan executed on December 7, 2007 (collectively, the "Judgments"). (*Id.* ¶¶ 8-10; Stipulation Exs. G, H, I, and J [Judgments].)

The Hollers filed a joint Chapter 7 petition on August 4, 2011 and claimed an exemption in their home. Both then filed separate motions to avoid the liens of the Judgments on their home. One of the motions addressed the two Judgments against Paul Holler, and the other addressed the two Judgments against Philomena Holler. The Hollers' motions were granted as uncontested on August 29, 2011, but after NOVA filed late responses, the parties agreed that the Bankruptcy Court should reconsider the motions on the merits. By order dated December 13, 2011, the Bankruptcy Court denied NOVA's motion for reconsideration and ratified, restated, and re-entered its previous order avoiding the judicial liens. *See In re Holler*, 463 B.R. 733 (Bankr. Ct. E.D. Pa. 2011). NOVA appealed the decision to this Court.

## II.   STANDARD OF REVIEW

District courts have jurisdiction over appeals from final bankruptcy court orders. 28 U.S.C. § 158(a). A district court reviewing a bankruptcy court's decision has plenary review over the bankruptcy court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999); *Computer Personalities Sys. v. Aspect Computer*, 320 B.R.

812, 816 (E.D. Pa. 2005). "Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; *see also In re Nelson Co.*, 959 F.2d 1260, 1263 (3d Cir. 1992). "A factual finding is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Matters left to the discretion of the bankruptcy court judge are reviewed for abuse of that discretion. *In re Martin's Aquarium, Inc.*, 98 F. App'x 911, 913 (3d Cir. 2004). An abuse of discretion exists if the "court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999) (internal quotation marks omitted).

**III.    DISCUSSION**

The Hollers seek to avoid the liens of the Judgments on their home pursuant to 11 U.S.C. §§ 522(b)(3)(B) and 522(f)(1). Under the Bankruptcy Code, a debtor's estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including an individual debtor's interest in property held as a tenant by the entirety. 11 U.S.C. § 541(a)(1); *Napotnik v. Equibank & Parkvale Sav. Ass'n*, 679 F.2d 316, 318 (3d Cir. 1982). However, Section 522(b)(3)(B) provides that a debtor may exempt from the estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B). The United

States Court of Appeals for the Third Circuit has interpreted this to mean that property held by spouses as tenants by the entirety is eligible for exemption if it is immune from process under state law. *Napotnik*, 679 F.2d at 318-19. Section 522(f)(1)(A) permits a debtor to avoid a judicial lien on property if it impairs an exemption to which the debtor is entitled. Thus, the question before the Court is whether the Hollers' home is immune from process under Pennsylvania law.

Pennsylvania courts have long recognized that a creditor of one spouse cannot obtain by judgment an enforceable lien on entireties property held by both spouses. *Napotnik*, 679 F.2d at 319 (citing *Amadon v. Amadon*, 59 A.2d 135 (Pa. 1948)); *Beihl v. Martin*, 84 A. 953, 954 (Pa. 1912). "At most, a creditor of either spouse may obtain a presently unenforceable lien upon that spouse's expectancy of survivorship—a lien that becomes enforceable only when the other spouse dies." *Napotnik*, 679 F.2d at 319. On the other hand, entireties property "may be reached by creditors to satisfy the joint debts of husband and wife." *Id.*; *see also In re O'Lexa*, 476 F.3d 177, 179 (3d Cir. 2007). Accordingly, if the Judgments at issue here constitute joint debts, the Hollers' home is not immune from process, and they are not entitled to avoidance of the judicial liens.

This Court agrees with the Bankruptcy Court that the Judgments do not constitute joint debts. In *A. Hupfel's Sons v. Getty*, 299 F. 939 (3d Cir. 1924), the Third Circuit held that spouses' individual obligations to the same creditor did not constitute a joint debt under Pennsylvania law. The husband, a saloon owner, took out loans from Hupfel's to lease property and purchase beer. *Id.* at 940-41. He defaulted on the loans. *Id.* at 941. The wife then agreed to assume payment of her husband's debt in exchange for a loan from Hupfel's to purchase a liquor license for the saloon. *Id.* She also defaulted, and Hupfel's obtained separate judgments against the husband and wife. *Id.* The court rejected Hupfel's argument that the husband and wife, by entering into separate obligations for

the same indebtedness, had a joint debt. *Id.* "The tenants were without doubt mutually interested in the transactions which resulted in the two judgments. But mutuality of interest in separate transactions out of which have grown separate obligations based upon different considerations does not amount to joint action within our understanding of the law. . . ." *Id.* While the facts of this case differ in some respects, *A. Hupfel's Sons* is controlling. Philomena Holler and Paul Holler signed separate commercial guaranty agreements that made them each liable as individuals for the full amount of the loans to B&P. Nothing in the documents evinces an intent to act jointly as spouses or as tenants by the entireties. NOVA could have required the Hollers to execute a single guaranty agreement, but it did not. As in *A. Hupfel's Sons*, the Hollers did not perform "a joint act consenting to a change in the attributes of the estate." *Id.*; *see also Blusiewicz v. Rosenfield*, 33 Pa. D. & C.2d 470, 473 (Ct. Com. Pleas Montgomery Cnty. 1964) ("[T]here cannot be an execution against property held as tenants by the entireties unless it is upon a judgment wherein defendants have acted jointly as tenants by the entireties and by their action have waived the substantive law of tenants by the entireties.").

NOVA argues that *A. Hupfel's Sons* is distinguishable from this case in two respects. First, in *A. Hupfel's Sons*, the spouses' liability was based on different instruments supported by different consideration and signed on different days, whereas the Hollers signed identical guaranty agreements on the same day agreeing to be responsible for identical debts. Second, the creditor's claims ripened against each spouse at different times in *A. Hupfel's Sons*, while they ripened at the same time in this case. These distinctions are immaterial because the Hollers each signed separate documents devoid of any indication that they intended to act together and waive their rights as tenants by the entirety. NOVA asserts that the following language in each of the guaranties executed by the Hollers creates

a joint debt:

>**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require . . . .

(Commercial Guars. at 3.) The Court does not read this provision as broadly as NOVA advocates; its more likely purpose is to maintain grammatical accuracy when multiple parties sign the same document. NOVA clearly knew how to create a joint obligation, as it did in the mortgage document executed the same day as two of the commercial guaranty agreements. Furthermore, while the parties dispute whether NOVA could have filed an action seeking a joint judgment against the Hollers, the fact is that NOVA did not do so. Instead, after B&P defaulted on the loans, NOVA took separate judgments against each spouse.

NOVA also urges the Court to hold that the Hollers had a joint debt based on the reasoning of *In re Bialon*, 67 B.R. 451 (Bankr. Ct. W.D. Pa. 1986). In that case, the debtor wife entered into a lease agreement to rent a store in a mall, and her non-debtor husband executed a guaranty for the lease. *Id.* at 452-53. The wife defaulted and filed for bankruptcy, and the creditor sought to satisfy its claim from entireties property in which the wife claimed an exemption. *Id.* at 453. The court held that the guaranty was actually a suretyship and that the husband and wife had a joint debt because both were primarily liable upon default. *Id.* at 453-54. Distinguishing *A. Hupfel's Sons*, the court emphasized that the debtor and her husband gave and received identical consideration—each agreed to pay rental fees so that the debtor could operate her business in the mall. *Id.* at 454.

NOVA's reliance on *Bialon* is misplaced. The Bankruptcy Court specifically found that the record lacked evidence of the consideration received by Philomena Holler and Paul Holler, respectively, or whether it was identical. *See In re Holler*, 463 B.R. at 746. This finding is not clearly

6

erroneous. More importantly, the *Bialon* court ignored the necessity of "a joint act consenting to a change in the attributes of the estate." *A. Hupfel's Sons*, 299 F. at 941; *see also Blusiewicz*, 33 Pa. D. & C.2d at 473. In the absence of a clear indication that the Hollers intended to waive their rights as tenants by the entirety, this Court will not hold that they have a joint debt. *See Blusiewicz*, 33 Pa. D. & C.2d at 473 ("This court is of the opinion that the incidents of tenants by the entireties should not be destroyed, and accordingly, will not disregard them.").

### IV. CONCLUSION

Because the Debtors' home is immune from process under Pennsylvania law and thus is exempt under 11 U.S.C. § 522(b)(3)(B), the judgment of the Bankruptcy Court is affirmed. An Order consistent with this Memorandum will be docketed separately.